UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
:
ALPERTON CAPITAL LTD., CAPINVEST :
FUND LTD., UNIVERSAL INVESTMENT :
FUND LTD., COMERCIAL PERFURADORA : Case No. 19-cv-4602
DELBA BAIANA LTDA., AND INTEROIL :
REPRESENTAÇÃO LTDA., :
          Petitioners, : PETITION TO CONFIRM
        v. : ARBITRATION AWARD AND FOR
: PRELIMINARY INJUNCTION IN
CONSTELLATION OVERSEAS LTD., : AID OF ARBITRATION
:
          Respondent. :
:
------------------------------------------------------X

**PETITION TO CONFIRM ARBITRATION AWARD
AND FOR PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

      Petitioners Alperton Capital Ltd., Capinvest Fund Ltd., Universal Investment Fund Ltd., Comercial Perfuradora Delba Baiana Ltda. and Interoil Representação Ltda. (collectively, "Petitioners" or "Alperton"), by and through their undersigned counsel, petition this Court to confirm an Award issued on April 26, 2019 in Alperton's favor pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention" or the "New York Convention") and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq*. ("FAA") and for preliminary injunctive relief pending confirmation pursuant to Fed. R. Civ. P. 65, and respectfully alleges as follows:

**NATURE OF THE ACTION**

      1.    Through this action, Petitioners seek limited relief from this Court to preserve the integrity of an ongoing International Chamber of Commerce ("ICC") arbitration seated in New York between Petitioners, four privately held Brazil-based companies, and Constellation Overseas Ltd. ("Constellation"), an insolvent oil and gas drilling services provider

with a registered office in the British Virgin Islands.  (*Constellation Overseas Ltd.* v. *Alperton Capital Ltd. et al.*, ICC Case No. 23856/MK (the "Arbitration").)  The arbitration arises from a joint venture the parties formed in 2010 to build, own and operate two offshore deep water oil drillships in Brazil—the Amaralina Star and the Laguna Star.  Pursuant to certain shareholder agreements (the "SHAs"), the parties formed and became shareholders in two companies under the laws of the British Virgin Islands, Amaralina Star Ltd. and Laguna Star Ltd. (the "Drillship Companies"), which own and operate each ship.  Constellation owns 55% of the Drillship Companies' voting shares and has day-to-day responsibility for operating the ships, while Alperton owns the remaining 45% of the shares.

2.  Beginning in August 2018, Constellation engaged in a series of bogus corporate acts to misappropriate Alperton's 45% stake in the joint ventures (the "Disputed Shares"), and use the Drillship Companies' assets as collateral to obtain refinancing of Constellation's own ballooning debts.  At the same time, Constellation initiated the Arbitration under the SHAs' arbitration clauses seeking a determination, among other things, that it was entitled to take the Disputed Shares.  Alperton asserted counterclaims in the Arbitration for, among other things, breaches of the SHAs, which required Constellation and its appointed Directors to act in good faith and for the benefit of the Drillship Companies and to follow certain procedures meant to protect Alperton as a minority shareholder before engaging in certain corporate transactions.

3.  Before an arbitral tribunal was constituted to hear the parties' claims, Constellation initiated insolvency proceedings in Brazil on December 6, 2018 and submitted a pre-packaged reorganization plan (the "RJ Plan") pursuant to which the Disputed Shares and the Drillship Companies' assets are set to be pledged to a consortium of lenders to support the

refinancing of Constellation's debt.  Upon information and belief, the RJ Plan is supported by a majority of Constellation's creditors, including certain financial institutions in this District.  Also on December 6, 2018, Constellation filed a petition in Bankruptcy Court in this District seeking recognition of the Brazilian proceedings under Chapter 15 of the Bankruptcy Code.  The Bankruptcy Court initially issued a stay under Section 362 of the Bankruptcy Code, and then in February 2019 issued an order agreed to by the parties allowing the Arbitration to proceed but directed the parties to obtain leave of the Bankruptcy Court before taking action to enforce in the United States any award issued in the Arbitration.

4. Shortly after the stay was lifted, Petitioners sought injunctive relief from the arbitral tribunal in the Arbitration (the "Tribunal") to maintain the status quo with respect to the Disputed Shares and prevent Constellation from improperly encumbering those shares until the Tribunal rules on the merits of the parties' dispute.  In an Interim Award issued on April 26, 2019,[1] the Tribunal ruled that Petitioners "have made out a *prima facie* case of a reasonable probability of success in proving ownership of the Disputed Shares" and that Petitioners "will suffer irreparable or otherwise significant harm if the core interim measures are not ordered."  (Ex. A ¶¶ 192, 201.)

5. Pending a final award in the Arbitration, the Tribunal accordingly ordered Constellation to (i) refrain from pledging, transferring or otherwise encumbering the Disputed Shares, (ii) refrain from pledging, transferring or otherwise encumbering the underlying assets of the Drillship Companies other than in the ordinary course of their business; and (iii) give Alperton adequate notice of no less than 30 days of any contemplated Fundamental Business Decisions as defined in Clause 4.9 of the SHAs (or any other decision requiring unanimous

---

[1] A true and correct copy of the Interim Award is attached as Exhibit A.

Shareholder or Board approval pursuant to the SHAs). *Id*. at 49-50.  The Tribunal ruled that these measures are urgently needed "to preserve its ability to render an effective final Award on, among other claims and counterclaims, whether the Claimant or the Respondent Alperton owns the Disputed Shares" and that "[n]either side would be able to prove its case and satisfy its requests for relief if the RJ Plan goes forward with the Disputed Shares consolidated with the other assets of Constellation and its affiliates." *Id*. ¶ 216.

6. Through this action, Petitioners seek a judgment confirming and enforcing the Interim Award in their favor pursuant to Article V of the Convention and 9 U.S.C. § 207. Petitioners also request an immediate preliminary injunction ordering the same relief granted by the Tribunal in the Interim Award until this Court can rule on Petitioners' motion to confirm and enforce the Interim Award, or until the Tribunal issues a final award on the merits of the dispute between Petitioners and Constellation, whichever occurs first.  On May 17, 2019, the Bankruptcy Court granted leave to Petitioners to seek the relief requested herein.  *In re Servicos de Petroleo Constellation S.A.*, No. 18-13952-MG, ECF No. 96.

7. Petitioners are separately seeking enforcement of the Interim Award in Brazil but require immediate relief in the United States to prevent lenders or other parties in the U.S. from acting in concert with Constellation to encumber the Disputed Shares as contemplated under the current RJ Plan.

**PARTIES**

8. Alperton Capital Ltd. is a privately held corporation organized under the laws of the British Virgin Islands, with its principal office in the British Virgin Islands.

9. Capinvest Fund Ltd. is a privately held corporation organized under the laws of the Bahamas, with its principal office in the Bahamas.

10. Universal Investment Fund Ltd. is a privately held corporation organized under the laws of the Bahamas, with its principal office in the Bahamas.

11. Comercial Perfuradora Delba Baiana Ltda. is a privately held corporation organized under the laws of the Brazil, with its principal office in Rio de Janeiro, RJ, Brazil.

12. Interoil Representação Ltda. is a privately held corporation organized under the laws of Brazil, with its principal office in Rio de Janeiro, RJ, Brazil.

13. Constellation Overseas Ltd. is a privately held company organized under the laws of the British Virgin Islands, with its principal office outside the United States.

**JURISDICTION AND VENUE**

14. This Court has original jurisdiction under 28 U.S.C. § 1331 because this action arises under the New York Convention and its implementing provisions of the FAA, "regardless of the amount in controversy." 9 U.S.C. § 203. *See Valden* v. *Discover Bank*, 556 U.S. 49, 59 n.9 (2009) ("Chapter 2 of the FAA . . . does expressly grant federal courts jurisdiction to hear actions seeking to enforce an agreement or award falling under the [New York] Convention.").

15. The Interim Award sought to be enforced through this action falls under the Convention because it arises out of a commercial contractual and legal relationship—namely the SHAs and the parties' other agreements at issue in the Arbitration. 9 U.S.C. § 202. Moreover, none of the parties to the Arbitration is a citizen of the United States. *Id*.

16. In addition, the Court has original jurisdiction under 28 U.S.C. § 1334(b), because this action is related to cases under title 11 of the United States Code—namely, Constellation's ongoing proceedings under Chapter 15 of the Bankruptcy Code that are currently pending before the Honorable Judge Martin Glenn in the United States Bankruptcy

Court for the Southern District of New York ("Chapter 15 Proceedings"). *In re Servicos de Petroleo Constellation S.A.*, No. 18-13952-MG.

17. This Court has personal jurisdiction over Constellation through its agreement to arbitrate disputes with Petitioners in New York. (Ex. A ¶ 14.) *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) ("[A]n agreement to arbitrate disputes in New York constitutes consent to personal jurisdiction in New York."); *WTA Tour, Inc.* v. *Super Slam Ltd.*, 339 F. Supp. 3d 390, 399 n.5 (S.D.N.Y. 2018) (Rakoff, J.) (same).

18. Venue in this District is proper pursuant to 9 U.S.C. § 204 because the parties designated New York, New York as the place of the Arbitration.

19. Venue is also proper under 28 U.S.C. § 1409(a) because the Chapter 15 Proceedings are also pending in this District. *In re Servicos de Petroleo Constellation S.A.*, No. 18-13952-MG.

## FACTS

**A. The Parties Enter Into a Joint Venture**

20. In 2008, Alperton, through its affiliate Delba Drilling B.V., entered into agreements with Petrobras Brasiliero S.A. ("Petrobras") for the construction, charter and operation of two ultra-deepwater offshore drillships (which became the Amaralina Star and Laguna Star, the "Drillships"), for which Petrobras would pay approximately $1.7 billion over six years (the "Petrobras Agreements"). (Ex. A ¶ 20.) Alperton, again via Delba Drilling B.V., then entered into agreements with Samsung Heavy Industries to design, build, equip, launch and deliver the two drillships (the "Samsung Agreements"). *Id.*

21. In 2010, Alperton formed a joint venture with Constellation to operate the Drillships, incorporated the two Companies in the British Virgin Islands ("BVI") and entered

into two substantially similar SHAs governed by New York law. *Id.* ¶¶ 21, 23. Under the SHAs, Constellation has a 55% stake in each Company and Alperton a 45% stake, with the Companies managed by a Board of Directors consisting of five directors appointed by Constellation (the "Constellation Directors") and four appointed by Alperton (the "Alperton Directors"). *Id.* ¶ 21. Alperton contributed the Petrobras and Samsung Agreements, and agreed to be responsible for an initial capital contribution of approximately $ 48 million for each of the Companies, while Constellation, as the majority partner, was to have day-to-day responsibility for managing and operating the Drillships. *Id*. ¶ 22. Constellation received a percentage of the Companies' total capital expenditures and gross revenues as a fee for its services, as well as other compensation. *Id*.

22. To finance the construction of the Drillships and initial operating expenses the Companies secured a credit facility extended by a consortium of international lenders, including several financial institutions located in New York ("A/L Lenders"). Upon information and belief, the aggregate principal amount of the project loans was $943.9 million. Approximately $260 million remained outstanding as of November 30, 2018. *Id*. ¶ 163.

23. From the outset of the project, the parties anticipated that, following the initial round of funding, the Companies' revenues would be sufficient to cover the operating expenses and debt service and still eventually turn a profit for shareholders, but agreed in the SHAs that certain operating expenses not covered by revenues could be paid proportionately through cash calls from the shareholders (the "Cash Calls"). Pursuant to the SHAs, except in cases of urgency, the Cash Calls had to "be preceded by thirty (30) days prior written notice" to the Parties. *Id*. ¶ 24(a) (quoting SHAs § 3.2(a).) The SHA also require "unanimous consent" of the Board of Directors or the shareholders for certain decisions, termed "Fundamental Business

Decisions," that include approving annual budgets, "requesting cash calls" not in the budget, and "any corporate reorganization." *Id*. ¶ 24(d) (quoting SHAs § 4.9.) Once the Cash Calls were properly noticed and approved by the Board, Alperton would then have the choice, in its "sole discretion," to fund its portion of Cash Call through either cash, financing from third parties, or loans provided to Alperton by Constellation under certain inter-shareholder loan agreements (the "Delba Loans"). *Id*. ¶ 24(a) (quoting SHAs § 3.2(b).) Finally, the SHAs also provide that the failure of the directors or shareholders to "reach a unanimous decision on any of the Fundamental Business Decisions" constituted a "Deadlock," after which the parties could resolve the deadlock or Constellation would have the right to purchase the Disputed Shares for a price determined using a calculation specified in the SHAs (the "Deadlock Sale Price"). *Id*. ¶¶ 24(d) (quoting SHAs § 4.9); 24(e) (quoting SHAs § 8.)

      **B.**    **After Alperton Identified Potential Mismanagement, Constellation Orchestrated a Purported "Deadlock" on August 7, 2018 To Squeeze Out Alperton**

      24.    Far from pursuing the parties' expectations of a self-sustaining joint venture, from 2011 through 2017 Constellation and its Directors initiated a series of Cash Calls totaling hundreds of millions of dollars, each time purporting to fund them on Alperton's behalf and increasing massively Alperton's Delba Loan balances, which accrued interest at a rate of 12-13% per annum. *Id*. ¶ 24(a) (quoting SHAs § 3.2(a).) Constellation did not even bother to obtain Alperton's approval for, or properly document, many of those Cash Calls. *Id*. ¶¶ 26-27.

      25.    In or about July 2017, following an overture from Constellation, Alperton began to consider selling its shares in the Companies and sought financial information about the Companies from Constellation in order to value its 45% minority stake. In doing so, Alperton discovered multiple red flags suggesting that the Companies' expenses (and thus the Cash Calls and Delba Loans that financed them) had been artificially inflated through improper transactions

8

between the Companies and Constellation's affiliates. *Id*. ¶ 28. Alperton requested additional information and Board meetings to discuss those red flags, which the Constellation-appointed Directors largely ignored. *Id*. ¶¶ 29-30. Ultimately, on July 30, 2018, the Alperton Directors filed a books and records action in the BVI seeking access to the Companies' records. *Id*. ¶ 30.

26. Unable and apparently unwilling to answer Alperton's questions, Constellation launched a campaign to seize complete control of the Drillship Companies. On August 7, 2018, during a meeting of the Companies' Boards of Directors, the Constellation Directors, without proper notice as required by the SHAs, called for a vote to retroactively ratify all Cash Calls that had been made since 2014. *Id*. ¶ 31. The Alperton Directors protested and abstained, on grounds that they lacked sufficient information to make informed decisions in the best interests of the Companies as required by Clause 4.8 of the SHAs. *See id*.

27. Later that same day, Constellation issued a Deadlock Notice under Clause 4.9 of the SHAs, which it claimed triggered a right to buy out Alperton at a Deadlock Sale Price the Constellation had already calculated unilaterally. *Id*. ¶ 33. Constellation claimed that, as a result of the inflated Delba Loans (which it calculated at $403 million), the Deadlock Sale Price was a negative $330,300,000 to $240,300,000 for both Companies, meaning Constellation could take Alperton shares for nothing and Alperton would still owe Constellation at least $240 million. *Id*.

28. Also that same day, Constellation filed a Request for Arbitration seeking, *inter alia*, a determination as to whether it was entitled to buy the Disputed Shares after the Deadlock and, if so, at what price, as well as an order that Petitioners pay to Constellation the net outstanding amount owed for the Delba Loans. *Id*. ¶ 34.

29. Upon information and belief, in December 2018 Constellation caused the Companies' official BVI share registry to be changed so that it appeared to third parties that Constellation had legitimately obtained the Disputed Shares in September 2018 (when it had not done so) and was the sole owner of the Companies. *Id*. ¶ 36. Constellation neither sought nor received Alperton's consent or leave of the Tribunal to do so.

    **C.    Constellation Attempts To Use the Disputed Shares and the Parties' Joint Venture Drillship Companies To Refinance Its Own Debts.**

30. On December 6, 2018, Constellation and various affiliates filed a joint voluntary judicial reorganization petition (the "RJ Petition") in Brazil with the Business Chamber of the Court of the City of Rio de Janeiro ("RJ Court" and the "RJ Proceedings"), as well as the Chapter 15 Proceeding for recognition of foreign proceedings before this Court. *Id*. ¶¶ 37, 40. Constellation included the Companies as debtors in the RJ Petition without disclosing Alperton's 45% interest and without obtaining Alperton's consent as required for any corporate reorganization under the SHAs. *Id*. ¶ 37. The Companies are not included as debtors in Chapter 15 Proceedings.

31. In the RJ Proceedings Constellation filed a Plan Support and Lock-Up Agreement ("PSA") that it reached (without Alperton's advanced knowledge or participation) with certain of its lenders, including certain banks located in this District, that provides for cross-collateralization of the Companies' shares and assets in support of Constellation's unrelated debt. *Id*. ¶ 38. The PSA calls for a closing within six months of the bankruptcy filing, or by June 6, 2019. *Id*. ¶ 39. The meeting of the Assembly of Creditors to approve the RJ Plan ("Creditors' Meeting") is currently scheduled for June 5, 2019 (for a first meeting) and June 18, 2019 (for a potential second meeting).

32.     Upon information and belief, the RJ Plan is currently supported by a majority of Constellation's creditors and is expected to be approved at the Creditors' Meeting.

33.     Despite Alperton's extensive efforts to assert its rights as the minority shareholder of the Companies in the RJ Proceedings in Brazil, to date the RJ Court has accepted Constellation's false claim that it is the sole owner of the Drillship Companies and not recognized Alperton's ownership rights.  In particular, on May 16, 2019, the RJ Court declined to recognize Alperton as owner of the Disputed Shares.  In addition, on May 8, the Brazil Court of Appeals declined to give effect to the Award as issued by the Tribunal because it had not been formalized by a court under Brazilian law.

**D.  The Tribunal Orders Constellation Not To Encumber the Disputed Shares During the Pendency of the Arbitration**

34.     With Constellation moving forward with its RJ Plan before the RJ Court, Petitioners on February 11, 2019 sought interim relief from the Tribunal to maintain the status quo and enjoin Constellation from encumbering the Disputed Shares and the assets of the Companies pending a final award deciding the merits of both parties' claims in the arbitration.[2] *Id.* ¶¶ 72, 120.

35.     After expedited briefing and a half-day hearing in New York on March 22, 2019, *id* ¶¶ 78, 81, 87, 92, 95-96, the Tribunal on April 8, 2019 issued an interim order directing Constellation to:

> a.  refrain from pledging, transferring or otherwise encumbering the Disputed Shares in the Companies, pending a final Award;

---

[2]  On December 11, 2018, the Bankruptcy Court ordered a stay of all pending proceedings with respect to Constellation, its parent and affiliates, in the U.S.  *Id*. ¶ 62.  On February 8, 2019, the Bankruptcy Court modified the stay to expressly allow the Arbitration to proceed.  Alperton moved for interim relief in the Arbitration on the next business day.  *Id*. ¶¶ 71,72.

11

      b. refrain from pledging, transferring or otherwise encumbering the underlying assets of the Companies other than in the ordinary course of their business, pending a final Award; and

      c. give Alperton adequate notice, in all cases no less than 30 days' notice, of any contemplated Fundamental Business Decisions, as defined in Clause 4.9 of the Shareholders' Agreements (or any other decision requiring unanimous Shareholder or Board approval under the Shareholders' Agreements), pending a final Award. *Id*. ¶¶ 105-106.

36. On April 26, 2019, having received the ICC International Court of Arbitration's approval, the Tribunal issued an Interim Award granting the same relief. *Id.* at 49. The Tribunal made these measures "immediately effective," subject to dissolution in 30 days if the Tribunal is not satisfied that Petitioners have posted a proper bond and provided a proper written unsecured undertaking in favor of Constellation. *Id*. ¶ 218, at 50.

37. The Tribunal required security in the amount of $10 million[3] for the additional and incremental costs as well as a written unsecured undertaking to be responsible for any costs and damages in excess of the aforementioned bond, if the interim measures are found to have been improperly issued. *Id*. at 49-50. Alperton is currently exploring options for sourcing a bond, but brings this proceeding now in order to ensure the Tribunal's relief is properly enforced and effective.

---

[3] In its interim order, the Tribunal set the bond in the amount of $33.4 million and provided that the order would be subject to dissolution if Petitioners failed to pay this amount within 10 days of the interim order. *See id*. ¶ 106(3), (5). Following Petitioners' motion for reconsideration, the Tribunal amended its bond requirement, reducing it to $10 million to be posted within 30 days after the Interim Award. *Id*. ¶¶ 112, at 49-50.

## COUNT 1:
## CONFIRMATION OF THE INTERIM AWARD
## UNDER 9 U.S.C. § 207

38. Petitioners repeat and reallege paragraphs 1 through 37 as though fully set forth herein.

39. The FAA requires that this Court confirm final interim arbitral awards "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]." 9 U.S.C. § 207.

40. The Interim Award is final as it requires specific action, resolves the rights and obligations of the parties with respect to the interim period at issue, and does so without affecting any future decisions of the Tribunal. The Interim Award in all respects conforms to the requirement of 9 U.S.C. § 207 governing confirmation of arbitral awards. Nor do any grounds exist for vacatur, modification or correction of the relief provided in the Interim Award under 9 U.S.C. § 10 or § 11, and no such application has been made.

## COUNT 2:
## PRELIMINARY INJUNCTION IN
## AID OF ARBITRATION UNDER FED. R. CIV. P. 65

41. Petitioners reallege paragraphs 1 through 40 as though fully set forth herein.

42. Pending this Court's decision on Petitioners' request to confirm the Interim Award, Petitioners request that this Court preliminarily enjoin Constellation and anyone acting in concert with them from engaging in the conduct prohibited by the Interim Award, and, in particular from (i) pledging, transferring or otherwise encumbering the Disputed Shares in the Companies; or (ii) pledging, transferring or otherwise encumbering the underlying assets of the Companies other than in the ordinary course of their business.

43. The Tribunal has already ruled that Alperton would face irreparable harm if Constellation were permitted to proceed with its plan to encumber the Disputed Shares and the Companies as part of to its reorganization. That threatened harm has continued despite the Interim Award.

44. To date, upon information and belief, Constellation has not amended the RJ Plan or otherwise complied with the Interim Award, nor does it appear likely to do so without this Court's assistance. Instead, Constellation has continued to press forward in Brazil with its RJ Plan and suggested it will not voluntarily follow the Interim Award. Following the Tribunal's initial interim order issued on April 8, 2018, Constellation informed the RJ Court overseeing its corporate reorganization in Brazil that the Tribunal's interim order "is not effective in Brazil and not capable of interfering in the management of [the] reorganization proceeding."

45. In addition, Constellation has set its Creditors' Meeting to approve the existing RJ Plan for June 5, 2019. If the creditors' approve the RJ Plan, as expected, the RJ Court is likely to quickly approve and confirm it and the plan will go into effect, including the provisions that require liens on Alperton's interests in the Drillship Companies.

46. Further, as the Tribunal found, Alperton will be unable to obtain effective final relief on its claims in the Arbitration if the RJ Plan as currently written is confirmed and approved by the RJ Court in Brazil and the Drillship Companies and their assets are pledged as contemplated, despite demonstrating on a preliminary record a reasonable likelihood of success of the merits of their claim of ownership of the Disputed Shares. (Ex. A ¶¶ 192, 201-204.)

47. Moreover, Alperton is highly likely to obtain confirmation of the Interim Award. Numerous other courts in this District and in the Second Circuit have confirmed interim awards granting preliminary injunctions and other equitable relief. *See, e.g.*, *Zeiler* v. *Deitsch*,

500 F.3d 157, 168 (2d Cir. 2007) (holding that tribunal's interim orders requiring a party to provide accounting of the joint U.S. real estate were final and enforceable); *Banco de Seguros del Estado* v. *Mutual Marine Offices, Inc.*, 344 F.3d 255, 258, 263 (2d Cir. 2003) (affirming a district court's confirmation of an interim award ordering respondent to post and maintain contractually mandated letter of credit pending a final determination by the tribunal); *CE Int'l Res. Holdings LLC* v. *S.A. Minerals Ltd. P'ship*, 2012 WL 6178236, at *3 (S.D.N.Y. Dec. 10, 2012) (McMahon, J.) (confirming an interim award of pre-judgment security and injunction preventing respondent from transferring its assets until that security is posted); *Yonir Techs., Inc.* v. *Duration Systems (1992) Ltd.*, 244 F.Supp.2d 195, 204–05 (S.D.N.Y. 2002) ("[E]quitable awards involving the preservation of assets related to the subject of arbitration are generally considered 'final' arbitral awards") (McMahon, J.).

48. Accordingly, this Court should, in support of the arbitration, enjoin Constellation from engaging in the conduct prohibited by the Interim Award and, in particular from pledging, transferring or otherwise encumbering the Disputed Shares in the Companies and/or underlying assets of the Companies until this Court enters judgment confirming and enforcing the Interim Award, or until the Tribunal issues a final award on the merits of the dispute between Petitioners and Constellation, whichever occurs first.

**RELIEF**

WHEREFORE, Petitioners respectfully petition this Court:

1. Enter judgment confirming the Interim Award in Alperton's favor and against Constellation;

2. Issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure ordering the same relief that the Tribunal ordered in the Interim Award until this

Court enters judgment confirming the Interim Award, or until the Tribunal issues a final award on the merits of the dispute between Petitioners and Constellation, whichever occurs first.

Dated: New York, New York
May 20, 2019

**SULLIVAN & CROMWELL LLP**

*/s/ Joseph E. Neuhaus*
Joseph E. Neuhaus
Andrew G. Dietderich
Andrew J. Finn
Inbar R. Gal
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Dr. Matthias M. Pitkowitz
379 West Broadway
New York, NY 10012
Tel: 646-902-6993

*Counsel to Alperton Capital Ltd.,*
*Capinvest Fund Ltd.,*
*Universal Investment Fund Ltd.,*
*Comercial Perfuradora Delba Baiana Ltda. and*
*Interoil Representação Ltda.*